Goudsouzian & Associates
2925 William Penn Highway, Suite 301
Easton, PA 18045-5283
Phone: (610) 253-9171
Fax: (610) 559-9281
Email: Steven@SNG-LAW.com

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN W. BURNARD AND KURT B. BURNARD, AS ADMINISTRATOR OF THE ESTATE OF ELLA E. BURNARD, DECEASED | ) ) ) ) | No. 5:18-CV-00607-JFL |
| **Plaintiffs** | ) | |
| vs. | ) ) | |
| MICHAEL J. STOCKER | ) | |
| **Defendant** | ) | |

## DEFENDANT, MICHAEL J. STOCKER'S ANSWER AND NEW MATTER TO PLAINTIFFS' COMPLAINT

AND NOW, comes the Defendant, Michael J. Stocker, by and through his attorneys, Goudsouzian & Associates, and responds to Plaintiffs' Complaint as follows:

## I.    INTRODUCTION

1.    Denied. It is specifically denied that the above captioned matter involves any inappropriate action by Defendant.

## II.    JURISDICTION AND VENUE

2.    Admitted.

3.     Admitted in part, denied in part. It is admitted that the Court has jurisdiction over the parties. It is denied that Defendant was engaged in any continuous or systematic business activity, scheme or conspiracy.

4.     Admitted.

5.     Admitted.

## III.   FACTUAL BACKGROUND

6.     Admitted.

### A.     ALFONSE PICONE AND HIS CONVICTION

7.     Denied. After reasonable investigation, Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph.

8.     Denied. After reasonable investigation, Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph.

9.     Denied. After reasonable investigation, Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph.

10.     Denied. After reasonable investigation, Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph.

11.     Denied. After reasonable investigation, Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph.

12.     Denied. After reasonable investigation, Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph.

13.     Denied. After reasonable investigation, Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph. By way of further answer, it is believed and therefore averred that the Burnards' Stifel Nicolaus Premier Stock account was not overdrawn. Rather, it is believed and therefore averred that checks would be written and that stock would be sold to have funds available for the checks.

14.     Denied. After reasonable investigation, Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph. By way of further answer, Mr. Picone did not act in concert with Defendant.

## B.     DEFENDANT STOCKER JOINS PICONE'S FRAUDULENT SCHEME

15.     Denied. After reasonable investigation, Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph.

16.   Denied. After reasonable investigation, Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph.

17.   Admitted in part, denied in part. It is admitted that a check was drawn on the Burnards' Wells Fargo Checking Account for $20,000.00. It is admitted that the check was made payable to Mike Stocker. With regard to the remaining averments in this paragraph, Defendant is without knowledge or information sufficient to form a belief. By way of further answer, this payment was a check signed by Ella E. Burnard for a new vehicle for Michael Stocker.

18.   Denied. After reasonable investigation, Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph.

19.   Denied. After reasonable investigation, Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph. By way of further answer, it is believed and therefore averred that the transfer of funds was at the request of the Burnards. By way of further answer, it is admitted that Defendant did redeposit the check.

20.   Admitted in part, denied in part. It is denied that Defendant had a position on his resume that he had a position at Stifel Nicolaus. It is admitted that

Defendant has listed on his Linkedin account that he had a position at Stifel Nicolaus. This was for a short period of time and was removed promptly.

21.     Admitted in part, denied in part. It is admitted that Defendant did receive the checks as set forth in paragraph 21. With regard to the checks received by Picone, Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph.

22.     Denied. After reasonable investigation, Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph.

23.     Denied. After reasonable investigation, Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph. By way of further answer, it is believed and therefore averred that Stifel Nicolaus would contact the Burnards about their account and their balance was not overdrawn. Rather, Stifel Nicolaus would communicate with Mr. Burnard and/or Mrs. Burnard with regard to the status of their account.

24.     Denied. After reasonable investigation, Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph. By way of further answer, it is believed and therefore averred that Stifel Nicolaus contacted the Burnards with regard to their account.

25.     Admitted.

26.     Admitted in part, denied in part. It is admitted that Defendant wrote a check to Picone from his own account. Picone approached Defendant and asked for a loan. Defendant lent Picone money pursuant to Picone's request. Defendant was also manipulated by Picone.

27.     Admitted in part, denied in part. It is admitted that Defendant was not an owner nor an authorized signature on the Burnards' Wells Fargo accounts or their Stifel Nicolaus accounts. With regard to the remaining averments in this paragraph, Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph.

28.     Denied. It is specifically denied that Defendant paid Picone $15,000.00. Rather, Defendant lent Picone $15,000.00 pursuant to Picone's request.

29.     Admitted.

30.     Denied. After reasonable investigation, Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph.

## C.     DEFENDANT STOCKER STRIPPED THE BURNARDS OF THEIR LIFE'S SAVINGS

31.     Denied. After reasonable investigation, Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph.

32.    Denied. After reasonable investigation, Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph.

33.    Denied. With regard to Alfonse Picone, after reasonable investigation, Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph. With regard to Defendant, the Burnards specifically intended to give to Stocker the monies that they did.

34.    Denied. With regard to Alfonse Picone, after reasonable investigation, Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph. With regard to Defendant, it is specifically denied that the Burnards had no intention of giving Defendant financial benefits, the Burnards did intend to give Defendant financial benefits.

35.    Denied. With regard to Alfonse Picone, after reasonable investigation, Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph. With regard to Defendant, the monies provided to Defendant from the Burnards were gifts.

36.    Denied. With regard to Alfonse Picone, after reasonable investigation, Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph. With regard to Defendant, the monies provided to Defendant from the Burnards were gifts.

37.     Denied. After reasonable investigation, Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph.

38.     Denied. Defendant utilized the gifts from the Burnards for various purposes.

39.     Denied. It is denied that any cash, stocks or annuities were fraudulently sold or stolen by Defendant.

40.     Denied. After reasonable investigation, Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph.

41.     Denied. With regard to Alfonse Picone, after reasonable investigation, Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph. With regard to Defendant, the Burnards knowingly and voluntarily provided Defendant with the gifts throughout their lifetime.

42.     Denied. After reasonable investigation, Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph.

43.   Denied. It is specifically denied that Defendant conduct was reckless and/or willful. Rather, Defendant was the recipient of gifts provided by the Plaintiffs.

## IV.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### FRAUD

44.   Defendant incorporates the proceeding paragraphs as if set forth at length.

45.   Denied. The averments in this paragraph contain conclusions of law which need not be answered. By way of further answer, it is specifically denied that Defendant ever acted fraudulently. It is further specifically denied that Defendant misled the Burnards to believe he was acting in good faith when he actually intended to deceive them and strip them of their life's savings. It is further specifically denied that Defendant made false and/or misleading statements of fact concerning his intentions with the Burnards' assets, as set forth previously herein. It is further specifically denied that Defendant assisted Alfonse Picone in any way. It is further specifically denied that Defendant forged the Burnards signatures on checks, applications or otherwise.

46.   Denied. The averments in this paragraph contain conclusions of law which need not be answered.

47.     Denied. The averments in this paragraph contain conclusions of law which need not be answered. By way of further answer, at no time did Defendant possess or control the Burnards' assets.

48.     Denied. The averments in this paragraph contain conclusions of law which need not be answered. By way of further answer, it is specifically denied that Defendant ever made any false, misleading, deceptive, or malicious advise, recommendations and/or statements to Plaintiffs.

49.     Denied. The averments in this paragraph contain conclusions of law which need not be answered. By way of further answer, it is specifically denied that Defendant acted with malicious intent, recklessness and willfulness towards the Burnards.

50.     Denied. The averments in this paragraph contain conclusions of law which need not be answered. By way of further answer, it is specifically denied that Defendant ever made any unconscionable practices, false pretenses, misrepresentations, concealment and suppression.

51.     Denied. It is specifically denied that Defendant would encourage Ms. Burnard to sign blank checks to him and then would tell her he would handle her bills and expenses, but instead would write in whatever amount of money he wanted for himself.

52.     Denied. The averments in this paragraph contain conclusions of law which need not be answered. By way of further answer, it is specifically denied that Defendant would approve the transfer from an overdrawn account or would receive assistance from another employee, agent or servant of Stifel Nicolaus.

53.     Denied. The averments in this paragraph contain conclusions of law which need not be answered. By way of further answer, it is specifically denied that Defendant's actions were misleading, deceptive, fraudulent or unlawful.

54.     Denied. The averments in this paragraph contain conclusions of law which need not be answered. By way of further answer, it is specifically denied that Defendant's actions were misleading, deceptive, fraudulent or unlawful.

WHEREFORE, Defendant respectfully requests that this Honorable Court deny and dismiss Plaintiffs' Complaint.

## SECOND CAUSE OF ACTION
## CONVERSION

55.     Defendant incorporates the proceeding paragraphs as if set forth at length.

56.     Denied. The averments in this paragraph contain conclusions of law which need not be answered. By way of further answer, Defendant did not deprive the Burnards of any savings, cash, interest or securities.

57.     Denied. The averments in this paragraph contain conclusions of law which need not be answered. By way of further answer, it is specifically denied that Defendant took the Burnards' savings in any way.

58.     Denied. It is specifically denied that Defendant remains in possession of the Burnards' money.

59.     Denied. It is specifically denied that Defendant took or remained in possession of the Burnards' savings. Rather, the Burnards voluntarily gifted Defendant money.

60.     Denied. The averments in this paragraph contain conclusions of law which need not be answered.

61.     Denied. The averments in this paragraph contain conclusions of law which need not be answered.

WHEREFORE, Defendant respectfully requests that this Honorable Court deny and dismiss Plaintiffs' Complaint.

### THIRD CAUSE OF ACTION
### CIVIL CONSPIRACY

62.     Defendant incorporates the proceeding paragraphs as if set forth at length.

63.     Denied. The averments in this paragraph contain conclusions of law which need not be answered. By way of further answer, Defendant did not act in concert with Picone.

64.    Denied. The averments in this paragraph contain conclusions of law which need not be answered. By way of further answer, Defendant did not act in concert with Picone.

65.    Denied. The averments in this paragraph contain conclusions of law which need not be answered. By way of further answer, Defendant did not act in concert with Picone.

66.    Denied. The averments in this paragraph contain conclusions of law which need not be answered. By way of further answer, Defendant did not act in concert with Picone. By way of further answer, it is specifically denied that Defendant forged financial documents, willfully disregarded reporting requirements, concealed their employee's missteps and accepted stolen property as payment.

67.    Denied. The averments in this paragraph contain conclusions of law which need not be answered. By way of further answer, it is specifically denied that meetings, conferences, telephone, email and other communications were held between Defendant and Picone for any improper practice.

68.    Denied. The averments in this paragraph contain conclusions of law which need not be answered. By way of further answer, it is specifically denied that Defendant performed any act intending to injure Plaintiffs or disregard their health, life and property interests.

69.     Denied. The averments in this paragraph contain conclusions of law which need not be answered. By way of further answer, it is specifically denied that Defendant acted with malicious intent, recklessness, and willful ness towards the Burnards.

70.     Denied. The averments in this paragraph contain conclusions of law which need not be answered.

WHEREFORE, Defendant respectfully requests that this Honorable Court deny and dismiss Plaintiffs' Complaint.

## NEW MATTER

71.     Defendant incorporates the proceeding paragraphs as if set forth at length.

72.     Ella E. Burnard, otherwise known as Aunt Ella to Defendant Michael J. Stocker ("Mikey"), worked at Taylor Wharton as a secretary when upon graduating from Easton High School.

73.     Aunt Ella was born in 1923.

74.     Aunt Ella did not get married until she was in her late 40's.

75.      Aunt Ella met John "Wayne" Burnard around 1970.

76.     In 1970, Aunt Ella (at that time known as Ella M. Elias) bought a home on Greenwood Avenue in Palmer Township in her own name.

77.     After Ella purchased the home, "Wayne" moved into her home on Greenwood Avenue from a third-floor room that he was living in at someone's house after separating from his wife.

78.     Aunt Ella sold the Greenwood Avenue house in 1975.

79.     In 1975, Aunt Ella bought a home on Parker Avenue in the College Hill section of Easton and John "Wayne" Burnard moved into that home also.

80.     Aunt Ella and Wayne bought a home in Reston, VA when her employer, ANPA relocated.  They purchase the Reston, VA home in 1983.

81.     Also, in 1983, Aunt Ella and Wayne purchased a property at 45 Crescent Drive in Nesquehoning.

82.     However, Aunt Ella kept her home on College Hill in Easton until 1988.

83.     John "Wayne" Burnard and Ella Elias Burnard were married after some years of living together in 1990.

84.     John "Wayne" Burnard and Aunt Ella did not have any natural children.

85.     John "Wayne" Burnard had a prior marriage to Elizabeth Burnard. They never had biological children.  John "Wayne" and Elizabeth Burnard adopted two children.  The couple divorced and the children (Kurt and Kim) remained with their mother.

86.    The plaintiff, Kurt Burnard is not a blood relative of Ella Elias Burnard. and never resided with John "Wayne" Burnard or Ella Elias Burnard.

87.    The children of John "Wayne" Burnard's prior marriage never resided with or were adopted by Ella Elias Burnard having no relationship blood or otherwise with Ella Elias Burnard or her family.

88.    It is believed and therefore averred that Kurt Burnard is the adopted son of John "Wayne" Burnard from the prior marriage to Elizabeth Burnard.

89.    Aunt Ella was the first cousin of Dorothy Karam Mawad.

90.    Aunt Ella had a close relationship with Dorothy and Dorothy's family.

91.    Dorothy Karam Mawad was the grandmother of Defendant, Mikey Stocker.

92.    Mikey Stocker was the first-born child of Barry Michael and Rebecca Mawad Stocker.  Mikey was born on August 24, 1993.  Barry Michael Stocker and Rebecca Mawad Stocker had a second child, Shelby Stocker born on December 13, 1998.

93.    Upon the birth of both the Stocker's children, Aunt Ella was not married and did not have any children of her own.

94.    Aunt Ella was very generous with Birthday, Christmas, Baptism, Holy Communion, Graduation and Wedding presents to all of Dorothy's children and grandchildren.

95.   Aunt Ella even paid for Dorothy's funeral and mercy meal.

96.   Ella treated Rebecca, Shelley and Barbara, daughters of Dorothy Karam Mawad as they were her own children.

97.   Aunt Ella was Godmother to Dorothy's first born, Shelley.

98.   Shelly bought Aunt Ella and Wayne their first cell phone, and for a period of time, paid their bill.

99.   Aunt Ella had a particularly close relationship with Mikey Stocker as well as another relative, Rema (Shelley's daughter).

100.   For example, Aunt Ella bough Rema's wedding dress.

101.    Aunt Ella was always generous to Mikey and often called him her favorite.

102.   Mikey was the first-born boy in the family.

103.   Ella would buy Mikey toys, savings bonds, bicycles and other gifts.

104.   By way of example, and not limitation, Aunt Ella bought Rema (Shelley's daughter) a care and Mikey his first car.

105.   While Aunt Ella was living in Reston, VA she would return to Easton, PA for weekends and all holidays which were spent at Dorothy, Rebecca or Shelley's homes with the children and grandchildren of Dorothy.

106.   When Mikey was a child, Ella would give him cash anywhere between $20.00 and $400.00 every weekend when she came to Easton.

107.   On one occasion, Ella gave Mikey a bank envelope with approximately $1,800.00 in cash.

108.   After Ella met Wayne, she would give money or checks to Mikey and often say "Don't tell Wayne."

109.   On certain occasions, when Wayne saw Ella giving Mikey cash, he asked "what's that" and Ella would respond to Wayne "shut your mouth, don't worry about it."

110.   These gifts to Mikey continued throughout her lifetime well prior to this litigation and were never coerced or requested by anyone.

111.   These gifts were free of undue influence, coercion, fraud, conversion or any of the unlawful mechanism for the transfer of funds.

112.   There is absolutely no fraud, conversion, civil conspiracy as plead by the Plaintiffs.  Quite the contrary, the money given to Mikey reflected her bond and love for Mikey who is in essence a surrogate son/grandson to Aunt Ella.

113.   Rema, Shelley's daughter lived at the home in Reston, Virginia for approximately 8 years rent and bill free.

114.   Mikey was a House of Representatives Page prior to attending George Washington University and Aunt Ella and her husband allowed him to live there while he was a student at George Washington, as well as a summer intern in Washington D.C. and provided funds for renovations to the townhome.

115.    Aunt Ella and John Wayne Burnard wanted Mikey to have the home in Reston, VA and prepared and executed a transfer of death documentation leaving the townhome to Mikey Stocker.

116.    Aunt Ella vacationed with Dorothy and her daughters and their families.

117.    Aunt Ella bought a timeshare for Dorothy in Aruba so they could all stay together.

118.    Even though Aunt Ella and John Wayne Burnard stayed there, Aunt Ella bought the timeshare for Dorothy and their family.

119.    Aunt Ella put the property in Dorothy's name.

120.    When Aunt Ella moved back to Pennsylvania, specifically, Nesquehoning, PA, Aunt Ella would attend weekly Sunday Dinners with Dorothy and the family, coming to Easton they would meet after mass and shop for the food to prepare the Sunday dinner together.

121.    Mikey and Shelby Stocker, Rebecca's children would have sleepovers at Aunt Ella's house in Nesquehoning, PA.

122.    Aunt Ella would stay at Rebecca's (Mikey's mother) house with Dorothy when Rebecca's husband traveled on business trips so Rebecca would not be alone and Aunt Ella and Dorothy could spend more time with the children.

123.   Once Dorothy and her husband, Emil passed away in January and May, respectively of 2007, Aunt Ella would come to Easton three to five times a week visiting her family, Dorothy's children and grandchildren.

124.   The Plaintiff Kurt Burnard never had any relationship with any of Ella's family members, including his absence from every Christmas, Thanksgiving and Birthday celebrations of Aunt Ella's blood family gatherings.  From the 1970's and for many years, there was little to no mention of Kurt B. Burnard to defendant.

125.   Moreover, the source of the funds was primarily Ella Elias Burnard's.

126.   Aunt Ella also worked from the time she graduated high school and saved.

127.   As noted above, when Aunt Ella moved back to Pennsylvania, they kept the townhome in Reston VA.

128.   At a later date, despite the fact that the Reston, VA home was listed to be and remained a transfer on death to Mikey Stocker, John "Wayne" Burnard asked for Mikey to purchase the house.

129.   John "Wayne" Burnard asked that the purchase price be $94,000.00 and a written agreement was executed.

130.   Mikey Stocker purchased the Reston, VA property and paid Aunt Ella and John "Wayne" Burnard the $94,000.00 as requested by John "Wayne" Burnard

as opposed to receiving it upon Aunt Ella and John "Wayne" Burnard's death for free.

131.   Closing took place October 2015.

132.   Mikey Stocker's father, Barry Michael Stocker, was the individual who alerted the authorities and Elder Abuse as to the actions of Alfonse Picone.

133.   In fact, Alfonse Picone took advantage of Mikey Stocker.

134.   During that same time period, relatives of Mikey Stocker told the Plaintiff, Kurt Burnard, what was transpiring with regard to Alfonse Picone.

135.   At no time did Mikey Stocker engage in any conspiracy with Alfonse Picone to deplete Aunt Ella and John "Wayne" Burnard's funds.

136.   Eventually, the Plaintiff, Kurt Burnard, isolated Aunt Ella and John "Wayne" Burnard from Aunt Ella's family.

137.   The Plaintiff, Kurt Burnard prevented Aunt Ella's family from seeing her, notifying the nursing home that Rebecca and her family were prohibited from visiting her, isolating her from her beloved family.

138.   Aunt Ella's family was not permitted to attend her funeral which was not a Catholic funeral despite Aunt Ella being a Maronite Catholic and member of Our Lady of Lebanon Church her entire life.

139.   It is believed and therefore averred that Wayne was aware that Ella was writing checks to Mikey and did not object or stop Ella from doing so.

140.   Wayne's objections began at a later date.

141.   It is believed and therefore averred that Wayne approved the transactions that were necessary.

142.   It is believed and therefore averred that Wayne authorized financial institutions to take the necessary steps to effectuate the transactions.

143.   It is believed and therefore averred that Ella and Wayne were advised that they should consider leaving gifts through a Will and they were unable to agree on how to do so for an extended period of time.

144.   During this period of time, as well as other times, Ella made a series of gifts to various individuals including Mikey.

145.   Aunt Ella named Mikey Stocker and his sister, Shelby Stocker as beneficiaries on a $12,000.00 life insurance policy.

146.   Mikey Stocker received a check from MetLife for approximately $6403.49.

147.   At all relevant times, the gifts made to Mikey Stocker were made knowingly, voluntarily and without duress.

148.   At all relevant times, the gifts made to Mikey Stocker were made as Mikey Stocker was a beloved relative of his Aunt Ella.

149.   Mikey Stocker was also taken advantage of by Picone and sought legal counsel to try and have the money returned to him.

150.   Defendant is entitled to a setoff.

151.   Defendant is entitled to a setoff from any moneys received by Plaintiff from any third party based on the allegations in Plaintiff's complaint.

152.   Defendant believes and therefore avers that Plaintiff has received.

153.   Defendant raises the affirmative defense of accord and satisfaction.

154.   Defendant raises the affirmative defense of estoppel.

155.   Defendant raises the affirmative defense of failure of consideration.

156.   Defendant raises the affirmative defense of laches.

157.   Defendant raises the affirmative defense of license.

158.   Defendant raises the affirmative defense of payment.

159.   Defendant raises the affirmative defense of release.

WHEREFORE, Defendant respectfully requests that this Honorable Court deny and dismiss Plaintiffs' Complaint.

Respectfully submitted,

Steven N. Goudsouzian, Esquire
Goudsouzian & Associates
2925 William Penn Highway, Suite 301
Easton, PA  18045-5283
Telephone:  610-253-9171
Attorney ID No. 74831

X:\Tmeat\x\clients (server08)\2017\Becker, Michael (Durand v.)419\Court Documents-US District Court\Answer and New Matter.docx

## VERIFICATION

The undersigned hereby states that the statement of fact made in the foregoing document are true and correct to the best of our information and belief. The language of the document was prepared on the advice of our attorney and any legal claims or legal defenses asserted in the document are pleaded on the advice of our attorney. If the document contains averments which are inconsistent in fact, then we have been unable after reasonable investigation to ascertain which of the inconsistent averments are true, but to the best of our information and belief, one of them is true.

I understand that the statements herein are made subject to the penalties of 18 Pa.C.S.A. §4904 relating to unsworn falsification to the authorities.


_____
Michael J. Stocker

Date: March 16, 2018